55 CCPA

**Application of George B. BOETTNER.**

**Patent Appeal No. 7996.**

United States Court of Customs and Patent Appeals.

June 20, 1968.

Rehearing Denied Oct. 10, 1968.

———◆———

Burton R. Turner, Pittsburgh, Pa. (Clarence R. Patty, Jr., Corning, N. Y., Sughrue, Rothwell, Mion, Zinn & Macpeak, Washington, D. C., of counsel) for appellant.

Joseph Schimmel, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH and ALMOND, Judges.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the rejection of claims 10, 16, 19 and 22 of appellant's application entitled "Flow Control of Molten Material." [1]

The invention relates to an improvement in the glass melting art and particularly in the construction and operation of a continuous glass melting tank. Glass melting tanks customarily have a partition or bridge wall between a melting end and a working or refining end thereof, which bridge wall is usually provided with a single throat or submerged passage. Although some attempts had been made in the past to utilize multiple throat bridge walls, the expected result of increased capacity and production never materialized, since most of the glass flow tended to pass through a throat on one side of the tank, leaving the throat on the opposite side virtually idle.

As pointed out in appellant's specification, it has recently been suggested that heat might be selectively applied to various throats of a multiple throat bridge wall to control the flow therethrough. However, it has been found that the application of heat to the various throats is not entirely satisfactory, since not only is the degree of control limited and a poor response time occasioned, but also the necessary insulation and operation are relatively expensive.

The present invention allegedly obviates the difficulties encountered with the known control method of applying heat to the throats of a bridge wall, and provides a method and apparatus for controlling the proportionment of flow of molten glass through a plurality of throats or submerged passages formed in a multiple throat bridge wall which separates the melting zone and working zone of a glass tank. More specifically, the proportionment of flow of molten glass through a plurality of throats in a multiple throat bridge wall is accomplished according to this invention by applying a gaseous stream above the glass flow emanating from certain of the throats, so as to cool such throats and thereby proportion the flow among the various throats.

1. Serial No. 180,677 filed March 19, 1962.

The apparatus is shown in Figs. 1 and 2 of appellant's application.

Molten glass 23 from melting zone 11 flows simultaneously through a plurality of submerged passages or throats 15, 16, and 17 into the working or refining zone 12 in a plurality of separate forwardly-flowing streams. The temperature of the molten material flowing through the throats is measured either by radiation pyrometers 30, 32, or thermocouples 35, 36, and 37, which are utilized to indicate an unbalanced flow condition through the submerged throats. That is, an overly active throat carrying a large volume of glass will produce a hot reading, whereas an idle throat having very little flow will produce a cool reading. Therefore, in order to bring the proportionment of flow through the various throats into balance, a fluid is selectively introduced into the refining zone 12 through a nozzle 25, 26, or 27. The nozzles 25, 26, and 27 are respectively connected through valves 215, 216, and 217 to a header or fluid carrying conduit 24 having a suitable blower or pump means 28 connected thereto for supplying fluid under pressure to the header.

When the thermocouple or radiation pyrometer for a certain throat indicates a hot condition, the valve associated with

the nozzle which is directed toward such throat is activated to supply cooling air above the glass flow emanating from such hot throat. The application of the cooling air above the selected flow positively cools the flow emerging from the hot throat and retards the flow therethrough so as to proportion the flow throughout the various throats.

Claim 16 is illustrative:

> 16. A method of producing glasslike material which comprises, forming a bath of molten glass-like material, passing a plurality of flows of such molten glass-like material through a plurality of submerged throats, positively cooling certain of the flows by applying a gaseous stream above the surface of the molten material which is emanating from certain of the throats and thereby controlling the relative rates of movement of such flows through the various throats.

Claim 10 is a method claim, and is broader than claim 16 in that it is not restricted to introduction of *cooling* gas above the molten glass flow. Claims 19 and 22 are apparatus claims drawn to a multiple throat melting furnace having means to introduce cooling fluid above the glass streams emanating from the throats. A single apparatus claim has been allowed.

The appealed claims were rejected as being unpatentable under 35 U.S.C. § 103. The references relied upon are:

| | | |
|---|---|---|
| Forman et al. (Forman) | 2,121,958 | June 28, 1938 |
| Paxton | 2,866,838 | December 30, 1958 |

Paxton discloses both the method of and the apparatus for sensing unequal heating in the individual throats of a multiple throat glass melting furnace and applying supplemental heat to the lower temperature throat to effect equalization of temperatures and equalization of flow of molten material through all of the throats.

Forman discloses a glass melting furnace having an extension connected to the furnace through a restricted neck portion. The extension serves to allow the glass to cool somewhat before it enters canals leading to drawing chambers where it is drawn into sheet glass. In order to cool the glass to proper drawing temperature, Forman blows air across the molten glass "at any one of a plurality of locations between the furnace and the drawing chamber. The air may be blown into the system at the neck portion of the furnace extension, at the furnace extension proper, at the main canals leading to the various drawing pits or at the individual canals immediately behind the bridge walls separating the drawing chambers from the canals."

The examiner rejected the claims as unpatentable over Paxton in view of Forman under 35 U.S.C. § 103. The basis of the rejection was stated as follows:

> Paxton discloses both the method of and the apparatus for sensing unequal heating in the individual throats of a multiple throat furnace and applying supplemental heat to the throat at a lower temperature to effect equalization of the temperatures and the equalization of fluid flow of the molten material through all of the throats. Column 9, lines 23 to 29 of Paxton further suggest that heat decreasing, which is equivalent to cooling, of the throats may be practiced as well as heat increasing to attain temperature regulation of the throats of the furnace. Forman et al teaches that the use of air blowers such as 30 and 31 to discharge air across and over the surface of the molten glass at the throat areas of furnaces to cool the molten glass within the throat are commonly used with glass furnaces. Therefore since the use of air blowing means set to blow air across the throat of a glass furnace are old and well known as shown by Forman et al, it would be obvious to a person of ordinary skill in the art to use the air blowing means of

Forman et al within the throats of the furnace of Paxton in substitution for the heating means 37 to 42 that permit the flow through the throats to be controlled by cooling rather than by heating. Although Paxton does not teach the use of cooling means, lines 23 to 29 of column 9 of Paxton suggest that heat decreasing, which is equivalent to cooling, as well as heat increasing may be used to control the flow of the molten glass through the throats of the furnace. Therefore it would be obvious to substitute a cooling means for the heating means within the throats of the glass furnace of Paxton.

The board affirmed this rejection, stating:

It is obvious that Paxton clearly teaches adjusting temperatures to affect viscosity of molten glass to maintain equal passage of molten glass through plural throats, column 5, lines 30 to 37. Even if Paxton did not specifically recite "increase or decrease heating effect," column 9, line 25, which we consider to be a fair teaching of "cooling" to the worker in the art, it would not constitute patentable invention over Paxton, in our opinion, to adjust flow by cooling less viscous molten glass, where the prior art clearly discloses adjusting flow by heating more viscous molten glass. This is particularly so when Forman et al. specifically disclose an air cooling step applied to molten glass issuing from a comparable throat. * * *

Appellant attacks the decision of the board on the ground that the rejection involves a piecemeal reconstruction of the references which would be illogical in the absence of appellant's own specification. He argues that Paxton contemplates only a *heating effect* being applied to the throats, and that an increase or decrease of the heating effect does not suggest in any way the application of cooling for flow control.

We cannot accept this argument. Paxton teaches equalizing the flow of glass through a plurality of throats by adjusting the temperature of these throats relative to each other. While Paxton uses heating means to make this adjustment, Forman makes it obvious to control the temperature of molten glass by cooling means identical to those employed by appellant. It would therefore seem obvious to use either heating means, cooling means, or even a combination of heating and cooling means to bring about relative temperature adjustments in a plurality of throats.[2]

Appellant has argued the patentability of the apparatus claims apart from the method claims. However, we find these claims also obvious for the reasons stated above.

The decision of the board is affirmed.

Affirmed.

SMITH, J., took no part in the decision of this case.

2. It is interesting to note that appellant's specification contemplates the use of either heating or cooling means for flow control. Appealed claim 10 therefore, not being limited to cooling means, contemplates either heating or cooling. Appellant's attempt to distinguish Paxton on the basis that Paxton discloses only heating means is therefore meaningless as to this claim.